# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By jburrell at 11:26 am, Nov 16, 2018*

JOHN JAMES, individually; and ROW EQUIPMENT, INC.,

    Plaintiffs,

v.

TEREX USA, LLC, d/b/a TEREX ENVIRONMENTAL EQUIPMENT,

    Defendant.

CIVIL ACTION NO.: 5:16-cv-60

## ORDER

Plaintiffs John James and ROW Equipment, Inc. filed this suit against Defendant Terex USA, LLC, d/b/a Terex Environmental Equipment, based on allegations that two wood chippers Terex sold them were defective. (Doc. 24.) The case is presently before the Court on Defendant Terex's Motion for Summary Judgment. (Doc. 46.) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment.

## BACKGROUND[1]

Defendant Terex is a Connecticut-based company that sells industrial wood chippers. (Doc. 24, p. 2.) Plaintiff James owns Plaintiff ROW, a Georgia corporation involved in clearing timber. (Doc. 51-1, p. 1.) On or about April 26, 2012, ROW purchased an industrial wood chipper ("Chipper 1") from Terex after speaking and meeting with Terex employee, Barry DeLau. (Doc. 55-2, pp. 1–3.) Two years later, on or about January 16, 2014, ROW purchased a second wood

---

[1] The recited facts represent the facts in the record with all reasonable inferences drawn in the light most favorable to Plaintiffs, the non-moving parties. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

chipper ("Chipper 2"). (Id.) Both machines were subject to separate financing agreements between ROW and Terex, and James personally guaranteed the contracts in each instance. (Doc. 51-1, pp. 12–13.) Additionally, both chippers were subject to Terex's standard limited warranty ("Standard Warranty"), which provided that the chippers were to be "free, under normal use and service, of any defects for a period of twelve (12) months from delivery to the customer, twelve (12) months from entry into service, or 2,000 hours of operation." (Doc. 51, p. 3.) Prior to concluding each sale, the parties agreed to extend the Standard Warranty for an additional twelve months and to include a 20% discount on non-warranty parts. (Id.)

It is undisputed that Plaintiff ROW endured technical difficulties after purchasing each chipper. (Doc. 46-1, pp. 6–7.) Though it was unable to provide assistance every time ROW requested it, Terex serviced the chippers pursuant to the Standard Warranty at no cost to ROW on nine occasions.[2] (Doc. 55-2, pp. 4, 6–8.) Terex employee Matt Sanders conducted one of the nine service visits around July of 2014. (Doc. 46, p. 12.) At some point during this visit, Sanders spoke with James and ROW employee David Cason about a custom part that another customer had ordered for a chipper, and James expressed interest in ordering a similar part for Chipper 1. (Doc. 46-26, pp. 11–12.) The visit was subsequently summarized in a July 30, 2014 email from Sanders to other Terex employees, wherein he described the service he provided and which parts he had ordered for use in additional repairs to one of ROW's chippers. (Doc. 51-41.) ROW employees also provided periodic technical assistance for the chippers. For instance, due to recurring electrical issues, Cason repaired Chipper 1 on several occasions. (Doc. 51-10, p. 25; doc. 55-2, pp. 5–6.) Cason also received support from Terex employee Sanders over the phone. (Id. at p. 5.)

---

[2] Terex serviced Chipper 1 on six different occasions between November 2012 and September 2014. (Doc.55-2, p. 4.) It serviced Chipper 2 on three occasions between July 2014 and late 2015. (Id. at p. 8.)

The undisputed facts also show that, despite these problems, ROW nonetheless used and rented out the chippers. Chipper 1 was used on three jobs between November 2012 and April 2013, Chipper 2 was used at least twice in 2014. (Doc. 51-1, pp. 4, 8–10–.) However, on a job in the fall of 2014, Chipper 2 experienced severe electrical and belt issues and was out of service for about two weeks. (Doc. 55-2, pp. 12–14.) Defendant Terex did not repair the machine immediately after this incident, but it was restored to working order at some point thereafter.[3] (Id.) Everbank repossessed the chippers in early 2016, and they were sold at an auction on March 24, 2016. (Doc. 51-1, p. 2.)

Plaintiffs initially filed this lawsuit in the Superior Court of Pierce County, Georgia. (Doc. 1-1.) Terex removed it to this Court on July 22, 2016. (Doc. 1.) Plaintiffs have since filed an Amended Complaint, asserting claims for breach of contract, breach of express warranties, breach of implied warranties, and fraudulent inducement. (Doc. 24.) Plaintiffs seek relief in the form of damages (for lost revenue and loss of current and future business) or, in the alternative, in the form of rescission of the contracts for the purchase and finance of the Chippers. (Id. at p. 7.) Plaintiffs also seek attorney's fees and punitive damages. (Id. at pp. 7–8.) Terex now seeks summary judgment as to all claims by both Plaintiffs. (Doc. 46.)

---

[3] ROW used Chipper 2 on a job in Louisiana in or around October 2014. (Doc. 51-1, p. 8.) Both parties agree that the machine had serious electrical and belt issues while on this job. (Id.) However, neither party provides evidence as to the resolution of this problem, and the undisputed facts show Chipper 2 functioned well enough to be used on another job in 2015. (Id. at pp. 8, 10.)

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party

only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted).

**DISCUSSION**

Defendant Terex sets forth several grounds for summary judgment against both Plaintiffs. As to Plaintiff James, Terex urges that his claims for breach of contract, breach of warranty, and rescission fail because he has conceded he is not a proper party to the contract. (Doc. 55, p. 2; doc. 51, p. 9.) Additionally, Terex asserts James's fraudulent inducement claim fails because James has not put forth any evidence of his individual reliance. (Doc. 55, p. 3.)

As to Plaintiff ROW, Terex first urges it is entitled to summary judgment on ROW's fraudulent inducement claim because there is no evidence of any intent to deceive on its part, nor is there any evidence that ROW justifiably relied to its detriment or suffered damages. (Id. at p. 18.) Next, Terex contends ROW's breach of contract and express warranty claims fail as a matter of law because ROW misconstrues the obligations of each party under the contract, and because the undisputed evidence in the case proves that Terex has complied with all contractual obligations under the correct construction of the contract. (Doc. 46, pp. 5–10.) Terex also asserts that ROW's implied warranty claim fails because Terex properly disclaimed all implied warranties under Georgia law. (Id. at p. 11.) Thus, Terex asserts ROW is not entitled to any of the relief requested as a matter of law.

In Response, Plaintiffs oppose Terex's representation of the contract. In addition to being obligated to "manufacture and deliver" Chipper 1 and Chipper 2, Plaintiffs assert Terex was required to provide "productive" chippers because statements made by Terex employee DeLau

during his pre-sale conversations with James resulted in an express oral warranty to such effect. (Doc. 51, pp. 10–11.) Plaintiffs also maintain that the implied warranty of merchantability applies to the at-issue sales and was not effectively disclaimed because copies of the Standard Warranty were not delivered to ROW at the time of the purchases. (Id. at pp. 17–18.) Plaintiffs claim Terex has violated both the express oral warranty made by DeLau and the implied warranty of merchantability because the chippers were defective and "continuously broken down." (Id. at p. 15.) Plaintiffs also argue that Terex violated its obligation to deliver chippers free from "defects in manufacture or materials." (Id. at p. 13.) Finally, Plaintiffs assert ROW has presented sufficient evidence to create a genuine issue of material fact as to whether Terex employee Sanders "knowingly misrepresented" his intention to fix Chipper 2, whereby Terex could be liable for fraudulent inducement. (Id. at p. 20.)

## I. Fraudulent Inducement and Rescission[4]

Plaintiffs allege that Defendant Terex committed fraudulent inducement when Terex employee Sanders misrepresented that he would "fix" a defect with Chipper 2 and, in reliance on that promise, Plaintiffs "continued using" Chipper 2, *albeit* "sparingly, and often as a backup machine while rented." (Id. at pp. 20–21.) Terex has moved for summary judgment on the fraudulent inducement claim, citing a lack of evidence to support the essential elements of the claim. (Doc. 46, p. 12.)

Fraud has five elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." McCrimmon v. Tandy Corp., 414 S.E.2d 15, 17 (Ga. Ct. App. 1991). It is well established under Georgia law that "fraud cannot generally be based on instances of misrepresentations as to future

---

[4] The Court addresses these claims first since, as explained more fully in Section II, *infra*, they are the only claims that Plaintiff James appears not to have expressly abandoned.

6

events." Rogers v. deMonteguin, 388 S.E.2d 10, 11 (Ga. Ct. App. 1989) (citation omitted). "An exception to this general rule exists where the promisor knows, at the time of the misrepresentation, that the future event will not take place." Pacrim Assocs. v. Turner Home Entm't, Inc., 510 S.E.2d 52, 57 (Ga. Ct. App. 1998) (citation omitted). "Actionable fraud, however, does not 'result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud.'" Gibson Tech. Svcs, Inc. v. JPay, Inc., 755 S.E.2d 377, 379 (Ga. Ct. App. 2014) (quoting J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 447 (Ga. Ct. App. 2007)).

Here, the representation at issue—Sanders's statement that he would "fix" a "defect" in Chipper 2—was allegedly made in July 2014 to a future event. (Doc. 46, pp. 12–13 doc. 51, p. 19.) Plaintiffs, however, point to no evidence from which a jury could find Sanders made that promise "with a present intention not to perform." Seminole Peanut Co. v. Goodson, 335 S.E.2d 157, 160 (Ga. Ct. App. 1985). In fact, evidence submitted to the Court by Plaintiffs directly undermines any such argument. Shortly after he made the promise, Sanders sent an email to fellow employees memorializing the visit and explaining the issues as he perceived them. (Doc. 51-41.) He described what remedial measures were taken during the visit and indicated that, since the visit, he had ordered parts needed to address the issues that were not resolved during his visit. (Id.) Thus, even assuming Terex ultimately failed to fix the defect, the evidence before the Court does not provide a basis for a finding that, at the time he made the promise to fix Chipper 2, Sanders had "a present intention not to perform." Goodson, 335 S.E.2d at 160; see also Futch v. Lowndes County, 676 S.E.2d 892, 894–95 (Ga. Ct. App. 2009) (concluding the county's attempts to fulfill its promise precluded a finding that it made that promise with a present intent not to preform); Pacrim Assocs., 510 S.E. 2d at 57 (evidence showing intent not to preform based on acts subsequent to the promise insufficient); compare BTL COM Ltd. v. Vachon, 628 S.E.2d 690, 696–

97 (Ga. Ct. App. 2006) (finding additional evidence—other than merely the eventual breach of the promises—created an inference that the defendants had a present intention not to perform promises when they were made). Because ROW proffers no evidence that Sanders had a present intent not to comply with the promise and the available undisputed evidence points to the opposite conclusion, Terex is entitled to summary judgment on Plaintiffs' fraudulent inducement claim.

Additionally, Defendant Terex is entitled to summary judgment on Plaintiffs' fraudulent inducement claim because Plaintiffs have failed to show that they justifiably relied on Sanders's alleged promise, much less that any such reliance caused them to suffer damages. Plaintiffs assert only that they "continued using" Chipper 2 after the promise was made and that they were damaged because they continued making monthly payments on Chipper 2 after Sanders promised to fix it. (Doc. 51, p. 21.) However, Plaintiffs have not put forth evidence to support the notions ROW or James did or would have done anything differently, or that they would have been in a better position, had they known that Sanders would ultimately not fix the defect.[5] Instead, this evidence shows that Plaintiffs simply maintained the status quo with regard to the machine following Sanders's promise. Furthermore, Plaintiffs cannot point to their decision to continue making monthly payments on Chipper 2 as evidence of reliance and damages, because they were already obligated to make those payments pursuant to a separate finance agreement, and there is no evidence that their payment obligations were in any way dependent on the Chipper's functionality or their entitlement to a repair by Terex. See, e.g., Adams v. JPMorgan Chase Bank, No. 1:10-CV-4226-RWS, 2011 WL 2532925, at *3 (N.D. Ga. June 24, 2011) ("This cannot be considered detrimental because he was bound by the Note to make his payments anyway").

---

[5] In an effort to show that they "changed [their] position to [their] detriment," Plaintiffs point out that, on one occasion, a ROW employee opted to use a different chipper instead of Chipper 2. (Doc. 51, p. 21.) Nothing indicates, however, that this decision was made because of Sanders's promise to fix Chipper 2.

8

Because Plaintiffs' fraudulent inducement claim fails as a matter of law, so must their request for the equitable relief of rescission of the purchase and finance contracts. (Doc. 24, p. 7.) Where a plaintiff is unable to put forth evidence for every element of fraud, any "rescission claim must fail." Champion Windows of Chattanooga, LLC v. Edwards, 756 S.E.2d 314, 318 (Ga. Ct. App. 2014) (citation omitted). Additionally, by continuing to possess and use the chippers until they were repossessed due to Plaintiffs' default on the finance contracts, ROW has waived the right to rescind the purchase contracts. Repudiation of the contract by a party entitled to rescind is a condition precedent to bringing an action for rescission. Owens v. Union City Chrysler-Plymouth, Inc., 436 S.E.2d 94, 96 (Ga. Ct. App. 1993); see also Gibson v. Alford, 132 S.E. 442, 448 (Ga. 1926) ("If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind such contract.").

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiffs' fraudulent inducement claim and their request for rescission.[6] (Doc. 46.)

## II.     Plaintiff James's Claims for Breach of Contract and Breach of Warranties

"[A] person who is not a party to a contract, or an intended third-party beneficiary of a contract, lacks standing to challenge or enforce a contract under Georgia law." Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1251 (11th Cir. 2015) (citations omitted). Additionally, an express warranty is a contract and privity is required to maintain suit on it, Stewart v. Gainesville Glass Co., 206 S.E.2d 857, 860 (Ga. Ct. App. 1974), and implied warranties "arise out of a contract for

---

[6] It should be noted that Plaintiffs do not argue in their Response in Opposition to Summary Judgment that James's individual claim for fraudulent inducement is still viable; they only discuss the claim as it relates to ROW. (Doc. 51, pp. 19–20.) James's failure to address Terex's arguments on the matter necessarily means the Court has no facts with which to construe in James's favor, providing an additional ground upon which Terex is entitled to summary judgment on James's claim for fraudulent inducement.

sale of goods and can only run to a buyer who is in privity of contract with the party against whom the implied warranty is being asserted," McQueen v. Minolta Bus. Solutions, Inc., 620 S.E.2d 391, 392 (Ga. Ct. App. 2005) (citation omitted).

As discussed above, James has conceded—and the Court has determined—he is not in privity of contract with Defendant Terex because he did not contract with Terex.[7] (Doc. 51, p. 9.) Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff James's claims for breach of contract, breach of express warranties, and breach of implied warranties. (Doc. 46.)

### III. Plaintiff ROW's Claims for Breach of Contract and Warranties

In any breach of contract action, it is necessary to first determine what, exactly, the contract at issue provides. Such a determination is especially important here, as ROW puts forth several different versions of Terex's obligations under the contract. It is undisputed that the Purchase Agreements from the sales of Chipper 1 and Chipper 2 operate as the contract between ROW and Terex. (See Doc. 46, p. 6; doc. 51, p. 10; docs. 51-2, 51-3.) By signing the Purchase Agreements, Terex agreed, at the very least, to manufacture and deliver Chipper 1 and Chipper 2, and ROW agreed to pay for Chipper 1 and Chipper 2. (Doc. 51, p. 10.)

The Purchase Agreement for Chipper 1 also memorializes the parties' negotiated warranty. (Doc. 51-2.) As noted on the face of the document, Terex agreed to provide ROW with an "[e]xtended warranty to 2 years (under standard warranty policies)" and a "2 [y]ear parts discount of 20% on all orders." (Id. at p. 3; see also doc. 51-1, p. 4.)

---

[7] Plaintiffs explicitly state that "James withdraws his claims for breach of contract and breach of warranties." (Doc. 51, p. 9.) However, as noted by Terex, the proper procedures for a voluntary dismissal by a plaintiff are found in Federal Rule of Civil Procedure 41. Even if Plaintiffs statement could be seen as a request for a dismissal of James's breach of contract and breach of warranties without prejudice, the Court finds, given the stage of this case, that such a without prejudice dismissal is not warranted.

Under Georgia contract law, "[as] long as a contract makes clear reference to the document to be incorporated," parties may "incorporate contractual terms by reference to a separate, non-contemporaneous document including a separate document which is unsigned. In such a situation, the two documents form a single contract." Henkel Corp. v. Leggett & Platt, Inc., No. 1:09-cv-0463-RLV, 2009 WL 2230813, *2 (N.D. Ga. July 24, 2009) (quotations and citations omitted). "[I]ncorporation by reference is generally effective to accomplish its intended purpose where the provisions to which reference is made have a reasonably clear and ascertainable meaning." Bowman v. Walnut Mountain Property Owners Ass'n, Inc., 553 S.E.2d 389, 393 (Ga. Ct. App. 2001) (alteration and citation omitted).

Here, it is undisputed that the word "warranty" as used in the Purchase Agreement refers to Terex's "Standard Warranty," the terms of which are contained in a separate document. (Docs.46-23, 51-2, 51-4.) The Purchase Agreement reflects the agreement between the parties that ROW was to receive additional, more favorable terms than the ones contained in the Standard Warranty: an extension of the limited warranty's standard one-year term, as well as a discount on parts explicitly excluded from coverage. (Doc. 51, p. 12; doc. 51-7, p. 26.) It is clear the parties intended the Purchase Agreement to be considered in tandem with the Standard Warranty and, as a matter of law, the documents together form a "single contract." Henkel, 2009 WL 2230813, at *2.

Having determined the terms of the contract, the Court must now address ROW's theories of liability in turn.

### A. Breach of Contract

Plaintiff ROW's initial theory of contract liability was based on the allegation that Defendant Terex contracted to "adequately manufacture" and "adequately maintain" the chippers yet failed to do so. (Doc. 24, p. 4.) However, in its Response to Terex's Motion for Summary Judgment, ROW seems to abandon this contention as an individual claim for breach of contract and seems to merge it into its claim for breach of express warranties.[8] (Doc. 51, p. 10.) In doing so, ROW fails to provide evidence sufficient to establish a genuine issue as to whether the parties actually created a contract to "adequately manufacture" and "adequately maintain" the chippers.

Additionally, ROW is barred from recovering damages for breach of contract because the Standard Warranty explicitly disclaims the recovery of all damages, limiting Terex's "aggregate liability . . . to the remedies of repair or replace[ment] . . . at the sole option of Terex." (Doc. 46-23, p. 4; see doc. 55, p. 14.) "Absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party." Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc., 490 S.E.2d 124, 127 (Ga. Ct. App. 1997) (citation omitted). ROW has not challenged the validity or efficacy of this damages provision, nor has it alleged any facts for recovery of damages for breach of contract despite the limitation. The Court therefore **GRANTS** Terex's Motion for Summary Judgment for breach of contract. (Doc. 46.)

### B. Breach of the Implied Warranty of Merchantability

Plaintiff ROW claims that Defendant Terex should be held liable for breach of the implied warranty of merchantability because the chippers did not function properly and were, therefore,

---

[8] ROW argued an alternative theory in the Response, alleging Terex contracted to provide "productive" chippers. (Doc. 51, p. 10.) However, this argument was also bound up with its claim for breach of express warranty, which is addressed below.

not merchantable. (Doc. 51, p. 18.) Terex asserts that the implied warranty was effectively excluded by the disclaimer contained in the standard warranties. (Doc. 46, p. 11.) ROW counters that the disclaimer was not effective because Terex cannot prove ROW received a copy of the Standard Warranty at the time of contracting, and therefore an implied warranty of merchantability attached. (Doc. 51, pp. 3, 8, 10–14, 17–18.)

Notably, ROW does not argue that the limited warranty (or the disclaimer within it) is deficient as a matter of law; nor does ROW argue that it was not aware that the Standard Warranty applied or that it did not agree to be bound by the terms of the Standard Warranty (including the exclusion of any warranty of merchantability). Its argument proceeds only on the delivery theory.

Even accepting as true (as the Court must at this stage) ROW's claim that it did not receive a copy of the Standard Warranty at the time it executed the sales contract, ROW does not point to—and this Court is not aware of—any law that supports its theory that physical delivery of a warranty is necessary for its terms to be binding. Moreover, it is well-established under Georgia law that "one who signs a contract is presumed to know its contents," Intl. Indem. Co. v. Smith, 342 S.E.2d 4, 5 (Ga. Ct. App. 1986) (citation omitted), including the contents of documents that are incorporated into the contract by reference but are missing from or are not attached to the contract, Lawson v. ADT Sec. Servs., Inc., 899 F. Supp. 2d 1335, 1340 (M.D. Ga. 2012). Thus, ROW cannot avoid the Standard Warranty's exclusion of any implied warranty of merchantability by claiming that Terex did not provide a copy of the warranty at the time the contract was executed. See, e.g., Dan J. Sheehan Co. v. Ceramic Technics, Ltd., 605 S.E.2d 375, 378–79 (Ga. Ct. App. 2004) (holding the plaintiff was bound by terms and conditions contained on second page of contract notwithstanding the fact that the second page was allegedly missing at the time contract was executed because the terms and conditions were incorporated by reference via language in the

first page, and also specifically noting that the plaintiff-signatory's "lack of recollection of the receipt of the second page does not create a material question of fact in light of the incorporation by reference"); Stinchcomb v. Wright, 628 S.E.2d 211, 216 (Ga. Ct. App. 2006) ("As a signatory to the sale contract, [Plaintiff] cannot complain that [a plat that was described in the contract as being attached thereto and incorporated therein by reference] was not attached to and a part of the contract at the time of its execution." (citation omitted)).

In light of the foregoing, the Court **GRANTS** Defendant Terex's Motion for Summary Judgment as to Plaintiff ROW's claim for breach of the implied warranty of merchantability. (Doc. 46.)

### C. Breach of Express Warranties

Plaintiffs argue that Defendant Terex has breached two express warranties: (1) an oral express warranty ROW claims resulted from Terex employee Barry DeLau's statement, made prior to the sale of Chipper 1, that the chippers would be "productive"; and (2) the Standard Warranty's promise that both Chipper 1 and Chipper 2 would be free of "defects in manufacture or materials." (Doc. 51, p. 10.) The Court will address each in turn.

#### (1) DeLau's Statement that the Chippers Would be "Productive"

When a warrantee—here, ROW—brings a breach of express warranty claim, the terms of any *written* warranty control. Culberson v. Mercedes-Benz USA, Ltd., 616 S.E.2d 865, 867 (Ga. Ct. App. 2005) (citations omitted). Terex's Standard Warranty, the controlling written warranty, states it "is expressly in lieu of and excludes all other warranties, express or implied." (Doc. 46-23, p. 4.) Additionally, the Standard Warranty also states that "[n]o amendment or modification to this warranty shall be authorized or effective unless such amendment . . . [is] made in writing and signed by an authorized Terex employee." (Id. at p. 3.) Notably, however, even when a

written contract purports to negate other warranties, it is to be "construed wherever reasonable as consistent" with the "[w]ords or conduct" of any express warranty to be excluded. O.C.G.A. § 11-2-316(1).

Here, even assuming DeLau's statement would be considered an express warranty, it is unenforceable in light of the Standard Warranty's clear exclusion language as well as the language barring the addition of any terms—such as oral warranties—without the written consent of Terex. Moreover, the Standard Warranty's language "warrant[ing] new [equipment] to be free, under normal use and service, of any defects in manufacture or materials," (doc. 46-23, p. 3), is consistent with DeLau's alleged promise that the chippers would be "productive," thus satisfying O.C.G.A. § 11-2-316(1).

Additionally, regardless of the foregoing, ROW has not provided sufficient evidence tending to show that DeLau's statement would qualify as a warranty. For a buyer to recover on an express warranty, it is necessary to show the dealer intended the statement to be an express warranty and knew that the purchaser was relying on it as such. Postell v. Boykin Tool & Supply Co., 71 S.E.2d 783, 786 (Ga. Ct. App. 1952) (citations omitted). Additionally, the statement "must be positive and unequivocal and not merely a vague, ambiguous, and indefinite statement of the seller regarding the property." Snow's Laundry & Dry Cleaning Co. v. Georgia Power Co., 6 S.E.2d 159, 162 (Ga. Ct. App. 1939).

Plaintiff ROW relies solely on James's testimony to support its claim that DeLau created an express warranty. (Doc. 51, p. 10.) When asked about "the misrepresentation" in his deposition, James stated that DeLau "express [sic] and implied this machine is going to be productive, and he's the one that's basically saying this machine is going to be as good as [other brands of machines]." (Doc. 51-7, p. 20.) ROW has not pointed to any evidence indicating that

DeLau actually intended his statement to be a warranty (rather than sales talk) or that he knew James, on behalf of ROW, relied on this statement as a warranty. Furthermore, DeLau's representations, as described by James, were nothing more than "vague and indefinite statements of the seller's opinion or commendation of the goods and/or mere non-actionable puffery" and thus insufficient as a matter of law to create an express warranty. Paws Holdings, LLC v. Daikin Indus., Ltd., Civ. No. 1:16-cv-058-JRH, 2017 WL 706624, at *15 (S.D. Ga. Feb. 22, 2017) (citations omitted) (representations regarding HVAC units' anticipated performance (e.g., "reliable operation," "low cost maintenance and service," etc.) were too vague and indefinite to be considered express warranties).

For all of these reasons, the Court finds DeLau's statements insufficient to constitute an express warranty and grants Defendant summary judgment on Plaintiff ROW's claim for breach of this claimed express warranty.

### (2) The Standard Warranty

Plaintiff ROW claims that it is entitled to damages because Defendant Terex breached the Standard Warranty's requirement that it provide chippers that were free of "defects in manufacture or materials." (Doc. 51, pp. 11, 13.) In support of this claim, ROW points to testimony from various individuals about ongoing issues with the chippers and instances where Terex representatives had to service, or assist remotely with others' service of, the chippers. (Id. at pp. 12–13.) Terex, however, argues that it is entitled to summary judgment on this claim because the Standard Warranty expressly limits Terex's obligations to the "repair or replacement" of the chippers, and according to Terex, the evidence shows that it complied with those obligations. (Doc. 55, p. 14; doc. 46-23, p. 4.) Even assuming Terex can show that it repaired the chippers or replaced certain parts, where there is an agreement to repair or replace an item, a "refusal to remedy

within a reasonable time, or a lack of success in the attempts to remedy would constitute a breach of warranty." Olson v. Ford Motor Co., 575 S.E.2d 743, 746 (Ga. Ct. App. 2002). Construing the evidence in the light most favorable to Plaintiff, genuine issues of material fact remain as to whether Terex complied with its warranty obligations.

The record is replete with evidence from which a jury could find that both chippers contained defects in manufacturing and materials. According to the undisputed facts, ROW employees fixed Chipper 1 on at least two occasions when Terex was unable or unwilling to send assistance. (Doc. 51-1, pp. 6–7.) Terex provided service to Chipper 1 for the sixth time in September of 2014, a few months after delivering Chipper 2. (Id. at pp. 3, 8.) Plaintiff ROW maintains Chipper 1 was never fully repaired. (Id.) It is undisputed Chipper 2 had issues as well. On one occasion, Chipper 2 "self-engaged" while on a job and required repairs on at least two parts. (Id. at p. 8.) At the time the chippers were repossessed, a dispute about an alleged defect in Chipper 2 had yet to be resolved. (Id. at p. 7.) Although ROW periodically operated the machines until their repossession, supporting Terex's contention that it discharged its warranty obligations, ROW has put forth sufficient evidence of recurring and unresolved issues to create an issue of fact as to whether Terex's efforts were reasonably timely and sufficiently successful as required under Georgia law. See Olson, 575 S.E.2d at 746. At this stage, it is not the Court's role to judge the credibility of ROW's account versus Terex's account or to determine the reasonableness and sufficiency of Terex's actions.

For all of these reasons, the Court **DENIES** Defendant's Motion for Summary Judgment on Plaintiff ROW's claim that Terex breached the Standard Warranty by failing to provide chippers that were free of "defects in manufacture or materials" and by failing to adequately repair or replace the chippers in light of the alleged defects. (Doc. 46.)

**IV. Punitive Damages**

Defendant Terex moves for summary judgment as to Plaintiffs' claim for punitive damages under O.C.G.A. § 51-12-5.1. (Doc. 46, pp. 19–20; see also doc. 24, p. 8.) While punitive damages may be awarded in the case of tortious conduct, Esprit Log & Timber Frame Homes, Inc. v. Wilcox, 691 S.E.2d 344, 348 (Ga. Ct. App. 2010), when a plaintiff's underlying tort claim fails, the plaintiff cannot recover punitive damages, Johnson v. Johnson, 747 S.E.2d 518, 523 (Ga. Ct. App. 2013) (citation omitted). Here, Plaintiffs' only claim sounding in tort is their claim for fraudulent inducement. In light of the entry of summary judgment against Plaintiffs on that claim, Plaintiffs are not entitled to recover punitive damages. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiffs' claim for punitive damages. (Doc. 46.)

**V. Attorney's Fees**

Plaintiffs request attorney's fees pursuant to O.C.G.A. § 13-6-11. (Doc. 24, pp. 7–8.) Under the statute, a plaintiff "must prevail on their basic cause of action in order to obtain litigation expenses." Ellis v. Gallof, 469 S.E.2d 288, 289 (Ga. Ct. App. 1996) (citations omitted). Because ROW still has a viable breach of warranty claim, it may ultimately be a prevailing party entitled to attorney's fees. Consequently, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiffs' claim for attorney's fees. (Doc. 46, p. 20.)

**CONCLUSION**

In light of the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment. (Doc. 46.) Specifically, the Court **GRANTS** summary to Defendant Terex USA, LLC, as to all claims asserted against it by Plaintiff John James and terminates Plaintiff James as a party to this case. Additionally, the Court **GRANTS** summary

judgment to Defendant on Plaintiff ROW Equipment, Inc.'s claims for fraudulent inducement, breach of contract and breach of the implied warranty of merchantability. Summary judgment is also **GRANTED** in favor of Defendant as to both Plaintiffs' requests for relief in the form of rescission and punitive damages. However, the Court **DENIES** summary judgment as to Plaintiff ROW Equipment, Inc.'s claim that Defendant Terex USA, LLC breached its Standard Warranty by supplying chippers that were defective and by not providing timely, effective repair services. Summary judgment is also **DENIED** as to Plaintiff ROW Equipment, Inc.'s claim for attorney's fees. These claims shall remain pending before the Court.

**SO ORDERED,** this 16th day of November, 2018.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA