# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

| | |
|---|---|
| ROW EQUIPMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> TEREX USA, LLC d/b/a TEREX ENVIRONMENTAL EQUIPMENT, <br><br> Defendants. | CIVIL ACTION NO.: 5:16-cv-60 |

## **O R D E R**

Plaintiff ROW Equipment, Inc. ("ROW") sued Defendant Terex USA, LLC ("Terex"), seeking damages for its purchase (from Terex) of wood chippers that ROW contends were faulty, frequently malfunctioned, and were never properly repaired or replaced by Terex. The Court granted summary judgment in favor of Terex on all but one of Plaintiff's claims. (Doc. 57.) The sole claim remaining for adjudication at trial is a claim that Defendant Terex breached its express standard warranty that the chippers would be free of "defects in manufacture or materials" and that it would adequately repair or replace the chippers. (Doc. 51, pp. 11, 13; doc. 57, pp. 16–17; see also doc. 15.) The case is presently before the Court on Defendant's "Objection[s] to Plaintiff's Exhibit List," (doc. 101), and Defendant's "Motion to Strike Plaintiff's Response to Objection to Plaintiff's Exhibit List/Alternative Motion for Leave to File Reply," (doc. 120). For the reasons set forth more fully below, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Defendant's Objections to Plaintiff's Trial Exhibits, (doc. 101), and **DENIES** Defendant's Motion

to Strike Plaintiff's Response as well as its alternative Motion for Leave to File a Reply, (doc. 120).[1]

## I. Non-Email Exhibits (Exhibits 16, 18, 19, 30, 31 and 32)

The majority of the exhibits to which Defendant objects are emails, and the Court will address those objections in a separate section. The Court focuses now on Defendant's objections to Plaintiff's Exhibits 16, 18, 19, 30, 31 and 32.

### A. Plaintiff's Exhibit 16

Plaintiff's Exhibit 16 is a ROW Equipment, Inc. ledger of "All Transactions for Terex Financial Servic[e], Inc.," which appears to list by date amounts paid (and the account from which the given payment was drawn) between September 2012 and October 2015. Defendant objects to this exhibit, arguing that "[p]ayments allegedly made to an entity other than Terex USA are immaterial to the issues to be tried, namely, whether Terex USA breached its written limited warranty and whether ROW suffered damages from such breach." (Doc. 101, p. 3.) Defendant also argues that "[t]his exhibit lacks foundation, authenticity, is irrelevant and immaterial, is confusing to the jury, and constitutes hearsay not subject to an exception." (Id.) Plaintiff has not offered any sort of response regarding this exhibit and thus has offered no grounds for its admissibility. This exhibit, however, would likely be admissible under the business-records exception to the hearsay rule. See Fed. R. Evid. 803(6). "As a business record, the ledger would be admissible in and of itself. Rule 803(6) contains no requirement that the entries on a business

---

[1] To be clear, the Court does not condone the tardy filing of responses by a party and directs Plaintiff to read and comply with this Court's directives in the future. However, given the circumstances here and the Court's preference for deciding disputes on their merits rather than by default, the Court will take Plaintiff's late-filed Response into consideration. The Court's decision to also deny Defendant's alternative request for an extension of time to file a reply is based on the fact that the Court's Trial Preparation Scheduling Order, (doc. 77), did not provide the parties with the right to file a reply in support of their objections to the opposing party's exhibits.

record—the 'record of an act, event, condition, opinion, or diagnosis'—must be supported by underlying documents in order for the business record to be admissible." DA Holdings, LLC v. Tenn. Land Consultants, LLC, 631 Fed. App'x 817, 822 (11th Cir. 2015) (citing Fed. R. Evid. 803(6)). Assuming Plaintiff is able to lay the necessary foundation at trial pursuant to Rule 803(6), Exhibit 16 will not be inadmissible hearsay. Moreover, it is not clear to the Court at this time that the ledger is immaterial and irrelevant to any issues at trial, such as damages. As a result, the Court **OVERRULES** the objections to Exhibit 16 at this time, subject to Defendant having the right to raise them again if and when Plaintiff tenders its Exhibit 16 at trial.

### B.     Plaintiff's Exhibit 18

Plaintiff's Exhibit 18 is a copy of a legal complaint filed in another court by Ever Bank Commercial Finance, Inc. against Plaintiff and John James. In that complaint, Ever Bank (which is not a party to the present action) represented itself as the assignee of the financing agreement that Plaintiff and Mr. James executed when Plaintiff purchased the chippers. Ever Bank also claimed that Plaintiff and Mr. James breached their payment obligations under that agreement, and that Plaintiff and Mr. James were therefore indebted to Ever Bank for more than $486,860.89. Defendant objects to the admission of the complaint into evidence on the grounds that it is "irrelevant and immaterial, is confusing to the jury, and constitutes hearsay not subject to an exception." (Doc. 101, p. 6.) Plaintiff has not offered any sort of response regarding this exhibit and thus has offered no grounds for its admissibility and has not explained how it is relevant to the breach of warranty claim against Terex that is at-issue in this case.

Exhibit 18 as presently tendered constitutes inadmissible hearsay, its relevance to the issues of this case is entirely unclear, and it thus seems likely to confuse or mislead the jury. As a result,

the Court **SUSTAINS** Defendant's objection to Exhibit 18 pursuant to Fed. R. Evid. 402, 403, and 802.

### C. Plaintiff's Exhibit 19

Plaintiff's Exhibit 19 is a credit card receipt from "Terex Environmental Equipment" reflecting payment of invoice number 36865 by John James for "Customer ID ROWE000" in May 2015. Defendant objects to this exhibit on the grounds that it is irrelevant, "immaterial to the issues to be tried, . . . confusing to the jury, and constitutes hearsay not subject to an exception." (Doc. 101, p. 7 (citing Fed. R. Evid. 403, 801–805).) In response, Plaintiff avers that the receipt is relevant because it evidences its damages, and also that it does not constitute hearsay because it is a statement by an opposing party under Fed. R. Evid. 801(d)(2) since it is a receipt that was created by Defendant.

Under Federal Rule of Evidence 802(d)(2), admissions by a party opponent are not hearsay. An admission by a party opponent is a statement "contrary to the trial position of the party against whom it is offered." O'Donnell v. Ga. Osteopathic Hosp., Inc., 748 F.2d 1543, 1548 n.6 (11th Cir. 1984), *overruling on other grounds recognized by* Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094 (11th Cir. 1987).

The invoice is non-hearsay because it is a statement of an opposing party and appears to be against that party's trial position (since it purportedly demonstrates part of Plaintiff's claimed damages in the case). See U.S. v. Williams, 837 F.2d 1009, 1013–14 (11th Cir. 1988) (receipts that had been given by opposing party admissible under Rule 801(d)(2)). Further, because the receipt appears to bear potential relevance to the element of Plaintiff's damages and does not appear on its face to be confusing, the Court **OVERRULES** Defendant's objections to Plaintiff's Exhibit 19.

### D. Plaintiff's Exhibit 30

According to Plaintiff, its Exhibit 30 is a video of a chipper self-engaging in Louisiana. Presently, the Court has not received a copy of the video in the format in which Plaintiff intends to present it to the jury at trial. Instead, the Court has been directed to a YouTube.com page to view the video. The 38-second video shows a large piece of machinery first sitting idle, then beginning to move and operate. In the accompanying audio, as the machine starts to move, a man (not shown on the screen) can be heard narrating with statements such as: "Look at that feed wheel move up and down by itself. . . . Nobody is in the machine . . . Almost had a guy get squished earlier by it." (See Doc. 119, p. 1 (link to YouTube.com page).) Defendant objects as follows:

> ROW did not produce the video during discovery. ROW does not know who took the video or what machine is depicted, and therefore, cannot lay a foundation for its admission or authenticate it. Fed. R. Evid. 901. Despite the lack of foundation or authenticity, ROW relies on the video for the truth of the matter asserted, namely, one of the Chippers engaged on its own. The video is speculative and is hearsay not subject to any exception. Fed. R. Evid. 403, 801-805.

(Doc. 101, p. 4.) In response, Plaintiff states that the voice in the video is that of Mr. James, who will testify at trial about what is depicted, but that, in order to avoid potential hearsay issues with the audio, Plaintiff will play the video without any audio at trial. (Doc. 119, p. 2.)

First, as to Defendant's objection that Plaintiff did not produce the video during discovery, the Court notes that the deposition testimony included in Defendant's brief indicates that Defendant was aware of and had access to the video on YouTube.com while discovery was still taking place. (See id. at pp. 3–4.) Defendant has not alleged any prejudice resulting from the failure to produce the video. As a result, the Court declines to exclude the video on that ground. Next, it was not clearly established from the provided deposition excerpt that Mr. James actually said he did not know who filmed this video. Regardless, even if he does not know who filmed this particular video, Mr. James can still testify about what is depicted in the video. If, as Plaintiff

5

claims he will do, Mr. James testifies that the video accurately depicts events that he observed first hand, he can lay the proper foundation for its admission. See Fed. R. Evid. 901(a) (requirement of authentication or identification for admissibility of evidence is satisfied by "evidence sufficient to support a finding that the item is what its proponent claims it is"); United States v. Clayton, 643 F.2d 1071, 1074 (5th Cir. 1981) ("A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it.").[2] Finally, Defendant fails to explain a reason the video would be "speculative," particularly if Mr. James can authenticate it and explain what it depicts based on first-hand knowledge, and any potential hearsay in the audio statements is remedied by Plaintiff's commitment to play the video without any audio. In light of the foregoing, the Court **OVERRULES** Defendant's objections to Plaintiff's Exhibit 30.

### E. Plaintiff's Exhibit 31

According to Plaintiff's exhibit list, Plaintiff's Exhibit 31 is "time sheets of attorneys and staff at law firm representing Plaintiff." (Doc. 95, p. 2.) The Court notes, however, that Plaintiff has not provided any such time sheets. Defendant objects on the ground of relevance, stating that these documents are "irrelevant and immaterial to the issues to be tried, confusing, and misleading of the issue[s] to be tried." (Doc. 101, p. 9.) Plaintiff has offered no substantive response, but the Court cannot ignore the fact that Plaintiff's claim for attorney's fees pursuant to O.C.G.A. § 13-6-11 survived summary judgment. (Doc. 57, p. 18.) Given this fact, the Court cannot say at this time that attorney and law firm staff time sheets are irrelevant, immaterial, confusing or misleading. Therefore, the Court thus **OVERRULES** Defendant's objection to Exhibit 31.

---

[2] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

### F. Plaintiff's Exhibit 32

According to Plaintiff's exhibit list filed with the Court, Plaintiff's Exhibit 32 is "any exhibit to any deposition." (Doc. 95, p. 2.) Defendant objects to this on the grounds that any such documents "are not properly identified and ROW's blanket listing of all deposition exhibits is unreasonable, contrary to the Federal Rules and this Court's rules, and do not give [Defendant] a fair opportunity to consider such exhibits." (Doc. 101, p. 9.) The Court agrees and therefore **SUSTAINS** the objection to Plaintiff's Exhibit 32.

## II. Email Exhibits (Exhibits 5, 6, 7, 8, 11 12, 13, 14, 20, 21, 22, 25, 26, 27 and 29)

### A. The Court Overrules Defendant's Objections Based on Lack of Authentication

The majority of the objected-to exhibits are emails exchanged between or among representatives of Plaintiff and/or representatives of Defendant (hereinafter the "Email Exhibits"). One of the objection grounds Defendant repeatedly raises as to the emails is that they "lack[] foundation." (Doc. 101, pp. 5–9.) Defendant cites Fed. R. Evid. 901, which covers "Authenticating or Identifying Evidence." (Id.) In response, Plaintiff points out that many of the at-issue emails were produced to it by Defendant during discovery and it notes that those emails feature Defendant's own BATES stamp ("TUSA#####"). (Doc. 119, p. 4.)

Certainly, production in discovery is one method of authenticating documents. See Cooper v. Southern Co., 260 F. Supp. 2d 1258, 1272 n.7 (N.D. Ga. 2003) (quoting 31 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE & PROCEDURE § 7105 (2000) ("Authentication can also be accomplished through judicial admissions such as . . . production of items in response to . . . [a] discovery request.")); U.S. for Use of Ben. of WFI Ga., Inc. v. Gray Ins. Co., 701 F.Supp.2d 1320, 1332 (N.D. Ga. 2010) (considering documents produced by opposing party during discovery in ruling on motion for summary judgment); see also Am. Fed'n

of Musicians of the United States and Canada v. Paramount, 903 F.3d 968, 976 (9th Cir. 2018) (rejecting claim that plaintiff had failed to authenticate email by adducing testimony; defendant had produced the email, which included email signature of defendant's employee and defendant's email address; content "plus the fact that it was produced by [defendant] in discovery" sufficed to enable reasonable juror to find that email is what plaintiff claimed); Archie v. Home-Towne Suites, LLC, 749 F. Supp. 2d 1308, 1314 (M.D. Ala. 2010).

As a result, Defendant's "lack of foundation" objection is unavailing as to Plaintiff's Exhibits 5, 7, 8, 12, 13, 14, 20, 21, 22, 25, 26 and 27. As to any remaining email exhibits, the Court notes that authentication can potentially be accomplished through witnesses at trial who were senders and/or recipients of the emails.[3] As a result, the Court **OVERRULES** Defendant's objections to the extent they are based on the claim of lack of foundation.

### B. Hearsay and Other Objections to Email Exhibits

Defendants object to each of the specified Email Exhibits on the ground that they are being offered for the truth of the matters asserted therein and that they therefore contain inadmissible hearsay.

"'Hearsay' is a statement that: (1) the declarant makes outside of court; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is not admissible during a trial unless specifically excepted by statute or rule. See Fed. R. Evid. 802. Notably, however, statements made by a party opponent (or its employees

---

[3] The Court notes that Plaintiff's Exhibit 29 is comprised of a chain of emails and the document bears the "TUSA#####" BATES stamp, but it also displays handwritten notes on the printed email. Additionally, the chain of emails included as Plaintiff's Exhibit 6 and the single email included as Plaintiff's Exhibit 11 do not feature the BATES stamp and, thus, do not appear to have been produced by Defendant. As a result, the Court declines to hold that, in their present forms, these exhibits have been authenticated. In the event it seeks to admit these exhibits at trial (subject to the Court's rulings herein), Plaintiff will have the opportunity at that time to attempt to authenticate them.

8

acting in the course of their employment) that are "contrary to the trial position" of that party-opponent do not constitute hearsay pursuant to Fed. R. Evid. 801(d)(2) and thus may be offered into evidence. O'Donnell, 748 F.2d at 1548 n.6. Moreover, "[u]nder the federal rules, hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1456 (11th Cir. 1997) (citing Fed. R. Evid. 805).

With these concepts in mind, the Court turns to each of the Email Exhibits.

**Plaintiff's Exhibit 5:** This exhibit is a May 5, 2015 email written by John James on behalf of Plaintiff and sent to a Terex representative (Stephen Greaves) advising that certain work needed to be done to a chipper. To the extent it is being offered for the truth of the matter asserted (i.e. that certain work needed to be done to a chipper), it constitutes inadmissible hearsay. Plaintiff has not offered any sort of response concerning this exhibit and thus has not argued that it is offering the e-mail for any non-hearsay purpose or that it fits within any sort of hearsay exception. As a result, Defendant's objection is **SUSTAINED** to the extent that Plaintiff's Exhibit 5 is offered at trial to prove the truth of any matter asserted therein.[4]

**Plaintiff's Exhibit 6:** This exhibit is a chain of emails exchanged between John James and two Terex representatives (Mr. Greaves and Alan Papke) over the course of a month and a half. The Court notes that the proffered copy of this exhibit is missing page 2 of the four-page chain. The Court additionally notes that this chain of emails would have to be authenticated if

---

[4] Defendant also objects to this particular exhibit on the ground that it is "speculative" because it says a Terex employee, who purportedly is not involved in and has no knowledge of the design of chippers, had advised that a feed wheel on one of ROW's chippers needed updating and replacing. (Doc. 101, pp. 2, 5.) Other evidence in this case indicates that the at-issue employee was involved in repairs to the chippers. As a result, the Court declines to find at this time that it would have been speculative for him to make the alleged comment and to exclude the statement solely on that basis. Therefore, Defendant's objection to Exhibit 5 on the ground that it is speculative is **OVERRULED**.

9

offered at trial as it does not clearly appear to have been produced by Terex during discovery. Plaintiff has not offered any sort of response to Defendant's objections to this exhibit. While the two emails (and part of a third) within the chain that were sent by Mr. Greaves or Mr. Papke could fall within the opposing party admission hearsay exception, Fed. R. Evid. 801(d)(2) (if Plaintiff showed the statements within them are contrary to Defendant's trial position), Plaintiff has not provided any grounds for the admissibility of Mr. James's email statements featured through the e-mail chain. Indeed, Mr. James's last (and longest) email within this chain contains multiple inflammatory and irrelevant statements regarding plans to file suit and problems other companies (not involved in this case) allegedly experienced with Terex chippers that are not at issue in this case. Because Plaintiff's Exhibit 6 in its present form contains inadmissible hearsay as well as prejudicial evidence (with no countervailing probative value having been proffered by Plaintiff), Defendant's objection is **SUSTAINED**.

**Plaintiff's Exhibit 7:** This exhibit, like Exhibit 5, is a single email from John James on behalf of ROW to Stephen Greaves in which Mr. James complains about problems with the chippers. Plaintiff has not offered any sort of response concerning this exhibit and thus has not argued that it fits within any sort of hearsay exception. As a result, Defendant's objection is **SUSTAINED** to the extent that Plaintiff's Exhibit 7 is offered at trial to prove the truth of any matter asserted therein.

**Plaintiff's Exhibit 8:** This exhibit, like Exhibits 5 and 7, is a single email from John James on behalf of ROW to representatives of Terex (here, Mr. Greaves and Nancy Greger) in which Mr. James complains about problems with the chippers. Plaintiff has not offered any sort of response concerning this exhibit and thus has not argued that it fits within any sort of hearsay exception. As

a result, Defendant's objection is **SUSTAINED** to the extent that Plaintiff's Exhibit 8 is offered at trial to prove the truth of any matter asserted therein.[5]

**Plaintiff's Exhibit 11:**  This exhibit, like Exhibits 5, 7 and 8, is a single email from John James on behalf of ROW in which Mr. James complains about problems with the chippers. Unlike Exhibits 5, 7 and 8, however, this email does not appear to be sent to a representative of Terex as the recipient does not have an "@terex.com" email address but instead has an "@financialservicecenter.com" email address. Defendant objects to the email, urging, *inter alia*, that it is hearsay and that it also contains additional hearsay statements within it. (Doc. 101, p. 2.) Defendant additionally questions the veracity of some of the statements contained within the email. (Id.)  Plaintiff has not offered any sort of response concerning this exhibit and thus has not argued that it fits within any sort of hearsay exception. As a result, Defendant's objection is **SUSTAINED** to the extent that Plaintiff's Exhibit 11 is offered at trial to prove the truth of any matter asserted therein.[6]

**Plaintiff's Exhibit 12:**  This exhibit is comprised of a series of emails exchanged between Mr. James and Mr. Greaves regarding arrangements for someone with Terex to address issues ROW was having with one of the chippers. Defendant anticipates that Plaintiff will rely on this chain of emails for the truth of the matters asserted therein, specifically including Mr. James's statement in one email that: "Oldest Terex 430TL is still acting up. Must be switch or sensor," and Defendant objects to the exhibit as a whole on the ground that it constitutes inadmissible

---

[5] The Court additionally notes that Exhibit 8 contains multiple inflammatory and irrelevant statements regarding threats to file suit and problems another company (not involved in this case) allegedly experienced with Terex chippers that are not at issue in this case.

[6] As with Exhibit 8, Exhibit 11 contains multiple inflammatory and irrelevant statements regarding problems another company (which is not involved in this case) allegedly experienced with Terex chippers and the fact that the third party had filed a lawsuit, topics that are not at issue in this case.

11

hearsay not subject to an exception. In its Response, Plaintiff cites Fed. R. Evid. 801(d)(2), and claims "the chain is a statement by an opposing party, and thus not hearsay." (Doc. 119, p. 2.)

While the emails drafted and sent by Mr. Greaves (which pertain to repair work and a disagreement about how issues with the chippers should be addressed) may be considered non-hearsay pursuant to the cited provision, the exhibit in its current form includes several emails from Mr. James, who is not an "opposing party" pursuant to Rule 801(d)(2). Plaintiff has not provided any basis for a determination that the emails drafted and sent by Mr. James are anything other than inadmissible hearsay being offered for the truth of the matter asserted. Because Plaintiff's Exhibit 12 in its present form contains inadmissible hearsay, Defendant's objection is **SUSTAINED** to the extent Plaintiff seeks to admit it for the truth of the matters asserted therein.

**Plaintiff's Exhibit 13:** This exhibit is comprised of one email sent by Thomas Feichtinger of Terex to multiple other Terex employees, and a responsive email sent to the same group of individuals by Alan Papke of Terex. In the initial email, Mr. Feichtinger states that John James had left him a message stating that Matt Sanders (of Terex) had told him that "the feed wheel design" on one of the chippers was poor and required the installation of a new design. The email goes on to emphasize that "[t]his is PER John [James]." In his responsive email, Mr. Papke merely asks, "Did we not weld the feed wheel covers on his units?" Plaintiff has not offered any sort of response concerning Defendant's objections to this exhibit and thus has not argued that it fits within any sort of hearsay exception. The Court notes that even assuming the email from Mr. Feichtinger is not hearsay (perhaps pursuant to Fed. R. Evid. 801(d)(2)), the majority of its contents are hearsay (what Mr. James said) and hearsay within hearsay (what Mr. James said Mr. Sanders said) for which Plaintiff has not argued or proposed any sort of applicable exception. Because

Plaintiff's Exhibit 13 in its present form contains inadmissible hearsay, Defendant's objection is **SUSTAINED** to the extent Plaintiff seeks to admit it for the truth of the matters asserted therein.

**Plaintiff's Exhibit 14:** This exhibit is the same exact single email (sent by Mr. James) that is marked as Plaintiff's Exhibit 8.[7] Defendant objects to it on the grounds that it is duplicative of another exhibit and therefore confusing and that it is inadmissible hearsay. Plaintiff has not offered any sort of response in support of its admissibility. For the same reasons set forth with regards to Plaintiff's Exhibit 8, the Court **SUSTAINS** Defendant's objections to Plaintiff's Exhibit 14 to the extent that it is offered at trial to prove the truth of any matter asserted therein

**Plaintiff's Exhibit 20:** This exhibit is a chain of emails exchanged between or among Mr. Papke, Mr. James and/or Mr. Greaves, with some other individuals receiving courtesy copies of some of the emails. The emails concern Plaintiff apparently being behind on paying certain invoices related to the chippers and also various issues with the chippers as reported by Plaintiff. Defendant anticipates that Plaintiff will rely on this chain of emails for the truth of the matters asserted therein, specifically including Mr. James's statements, in two emails he authored, that: "It wouldn't be as much an issue if these chippers would run more than 2 days before going down" and "I can't depend on either machine running consistently more than 1 day. The only time they don't have downtime is when I am not running them." (Doc. 101, p. 7.)

In its Response, Plaintiff claims that "[t]he email chain[] show[s] how Defendant refused to meet its obligations under the warranty without first receiving additional payment from Plaintiff." (Doc. 119, p. 3.) Despite the fact that the exhibit contains emails written by Mr. James,

---

[7] The Court notes that the only difference between the document marked as Plaintiff's Exhibit 8 and the one marked as Plaintiff's Exhibit 14 is the BATES stamp number (the former is stamped "TUSA00164" while the latter is stamped "TUSA00163").

13

Plaintiff offers only a blanket argument that this entire exhibit is admissible as a statement by an opposing party under Fed. R. Evid. 801(d)(2) and "thus not hearsay." (Doc. 119, p. 4.)

While the emails drafted and sent by Mr. Greaves or Mr. Papke may be considered non-hearsay pursuant to the cited provision,[8] the exhibit in its current form includes several emails authored by Mr. James, who is not an "opposing party" pursuant to Rule 801(d)(2). Plaintiff has not provided any basis for a determination that the emails drafted and sent by Mr. James are anything other than inadmissible hearsay being offered for the truth of the matters asserted therein. Because Plaintiff's Exhibit 20 in its present form contains inadmissible hearsay, Defendant's objection is **SUSTAINED** to the extent Plaintiff seeks to admit it for the truth of the matters asserted therein.[9]

**Plaintiff's Exhibit 21:** This exhibit is a chain of emails. The first is an email drafted by Mr. James and sent to unspecified recipients regarding issues with the chippers. The next two emails are exchanged only between Mr. Papke and Mr. Greaves, though the emails appear to be in reference to the initial email from Mr. James. Plaintiff has not offered any sort of response concerning the admissibility of this exhibit. This lack of response alone is grounds for sustaining Defendant's objection. Moreover, while the two emails within the chain that were sent by Mr. Greaves and Mr. Papke would arguably fall within the party admission hearsay exception, Fed. R. Evid. 801(d)(2), since they are an agreement by the two men to ignore Mr. James's email, Plaintiff

---

[8] The Court notes, however, that even the portions of Plaintiff's Exhibit 20 that may be non-hearsay contain additional layers of potential hearsay, such as when Mr. Greaves writes: "There was an issue relayed to Matt Sanders via text last week that the yoke had an issue, by ROW's supervisor David Walsh, which I mentioned to you."

[9] As for Plaintiff's argument that this Exhibit demonstrates that Defendant refused to meet its obligation under the warranty, Plaintiff has not explained why the entirety of the exhibit in its present form, which contains prejudicial hearsay statements, must be introduced for that purpose. Moreover, without more of an explanation from Plaintiff, the Court cannot find that the probative value of this exhibit in its present form outweighs its undue prejudice.

has not provided any grounds for finding Mr. James's email admissible. Because Plaintiff's Exhibit 21 in its present form contains what appears to be inadmissible hearsay, Defendant's objection to it in its present form is **SUSTAINED** to the extent it is offered for the truth of the matters asserted therein.

**Plaintiff's Exhibit 22:** This exhibit is a chain of emails exchanged between Mr. Greaves and Devon Milligan, a ROW employee, with some other individuals receiving courtesy copies of some of the emails. Defendant anticipates that Plaintiff will rely on this chain of emails for the truth of the matters asserted therein, specifically including Mr. Milligan's statements, in one email he authored, that: "it is truly a breakdown at least once a week" and "[s]ometimes it's a simple problem but half a days lost production." (Doc. 101, p. 7.) In its response, Plaintiff claims that "[t]he email chain[] show[s] how Defendant refused to meet its obligations under the warranty without first receiving additional payment from Plaintiff," and proceeds to offer only a blanket argument that the entire exhibit is admissible as a statement by an opposing party under Fed. R. Evid. 801(d)(2) and is "thus not hearsay." (Doc. 119, p. 4.)

While the emails drafted and sent by Mr. Greaves may be considered non-hearsay pursuant to the cited provision, the exhibit in its current form includes several emails authored by Mr. Milligan, who, as a ROW employee, is not an "opposing party" pursuant to Rule 801(d)(2). Plaintiff has not provided any basis for a determination that the emails drafted and sent by Mr. Milligan are anything other than inadmissible hearsay being offered for the truth of the matter asserted. Because Plaintiff's Exhibit 22 in its present form contains inadmissible hearsay, Defendant's objection is **SUSTAINED** to the extent Plaintiff seeks to admit it for the truth of the matters asserted therein.[10]

---

[10] As for Plaintiff's argument that this exhibit demonstrates that Defendant refused to meet its obligation under the warranty, Plaintiff has not explained why the entirety of the exhibit in its present form, which

15

**Plaintiff's Exhibit 25:**  This exhibit is comprised of a two-email chain with a photo attachment.  The first page of the exhibit shows that Terex employee Matt Sanders emailed a photo to Tom Johnson (who, according to his electronic signature block, was "Engineering Manager" for Terex), with the subject line "John James 430 TL yoke cyl [sic] mount broke."  This email with the photograph was then forwarded by Mr. Johnson to several other Terex representatives along with the following text: "I need info on cylinder mount on yoke 430 TL on the ME side – pull parts and get to Fitz – also need cylinder for the same."  The second page of Plaintiff's Exhibit 25 is a photograph of an object.  Defendant objects to this exhibit on the grounds that it is hearsay not subject to any exception and that it "calls for speculation," explaining as follows: "It is apparent ROW will seek to use this exhibit under the guise of an admission against interest.  To make that argument, ROW must speculate on the truth of the matter asserted that the yoke repair was required due to some design or manufacturing defect."  (Doc. 101, pp. 7–8.)

In response, Plaintiff argues that this exhibit is a statement by an opposing party under Fed. R. Evid. 801(d)(2) and "thus not hearsay."  (Doc. 119, p. 4.)  Given the fact that both emails in the chain were drafted and sent by Terex employees and discuss something on a chipper being broken and what was needed to repair it, the Court agrees that the emails themselves are admissible non-hearsay.[11]  The photograph, however, presents questions because it not apparent that it was taken by Mr. Sanders or how Plaintiff intends to lay a foundation for its admissibility.  However, the Court will allow Plaintiff an opportunity to lay that foundation prior to ruling on its admissibility.

---

contains prejudicial hearsay statements, must be introduced for that purpose.  Moreover, without more of an explanation from Plaintiff, the Court cannot find that the probative value of this exhibit in its present form outweighs its undue prejudice.

[11] Defendant has not shown that the exhibit "calls for speculation" on the truth of the matter asserted such that it should be inadmissible.  It would be for the jury to determine whether to believe, and what weight to apply to, the statements made by Defendant's employees in these emails.  Thus, to the extent Defendant's objection is based on the ground that the exhibit "calls for speculation," it is **OVERRULED**.

**Plaintiff's Exhibit 26:** This single-page exhibit is comprised of two emails that are apparently part of an older ongoing chain of emails. (The sender information and date for an earlier email in the chain is displayed on the bottom of the exhibit but that email is not included.) Defendant objects first on the basis that the exhibit is incomplete. Defendant purports to provide the full chain of emails as an exhibit to its objections, but it apparently failed to do so. Defendant has offered no explanation as to why Plaintiff's failure to include prior emails as part of this exhibit renders the two at-issue emails inadmissible. (For instance, Defendant has not argued that the omission of the earlier emails renders these two emails misleading.)[12] Defendant additionally objects on the theory that the emails are hearsay and that they cannot be deemed admissible as an "admission against interest" because "[t]o make that argument, ROW must rely on the truth of the matter asserted on page TUSA00708, namely, '[James] stands to loose (sic) a lot of money if these machines can not produce.'" (Doc. 101, p. 8.)

In its response, Plaintiff characterizes the emails as showing Terex employees "fretting about–but not doing anything to alleviate–James's frustrations with the chippers' failures" and also discussing the fact that they would abstain from offering certain assistance until Mr. James paid an "outstanding $21,713.81 balance." (Doc. 119, p. 5.) According to Plaintiff, "[these] statements show Defendant's employees skirting the requirements of the warranty due to missed payments from James (due to the chippers' uselessness)." (Id.) Plaintiff argues that the emails fall within Fed. R. Evid. 801(d)(2) and thus are nonhearsay.

---

[12] In its response, Plaintiff stated that it would "tender a complete copy of these emails," but it has not done so and thus the Court is unable to assess any objectionable contents of those other emails.

The Court agrees that both emails in Plaintiff's Exhibit 26 contain nonhearsay statements pursuant to Fed. R. Evid. 801(d)(2).[13] As a result, the Court **OVERRULES** Defendants objections thereto.

**Plaintiff's Exhibit 27:** This exhibit is comprised solely of a single email from Mr. Feichtinger to various other Terex employees. This email is a duplicate of the initial email in the two-email chain marked as Plaintiff's Exhibit 13. As described previously in this Order, in the email, Mr. Feichtinger states that Mr. James had left him a message stating that Matt Sanders (of Terex) had told him that "the feed wheel design" on one of the chippers was poor and required the installation of a new design. The email goes on to emphasize that "[t]his is PER John [James]." Plaintiff has not offered any sort of response concerning Defendant's objections to this exhibit and thus has not argued that it fits within any sort of hearsay exception. The Court notes that even assuming the email is not hearsay (pursuant to Fed. R. Evid. 801(d)(2)), the majority of its contents are hearsay (what Mr. James said) and hearsay within hearsay (what Mr. James said Mr. Sanders said) for which Plaintiff has not proposed any sort of applicable exceptions. Because Plaintiff's Exhibit 27 in its present form contains inadmissible hearsay, Defendant's objection is **SUSTAINED** to the extent Plaintiff seeks to admit it for the truth of the matters asserted therein.

**Plaintiff's Exhibit 29:** This exhibit is a two-email chain. The first email is a duplicate of the email included in Plaintiff's Exhibit 25, wherein Mr. Johnson forwarded Mr. Sanders' email (containing a photograph of equipment) to several other Terex representatives along with this text: "I need info on cylinder mount on yoke 430 TL on the ME side – pull parts and get to Fitz – also need cylinder for the same." Plaintiff's Exhibit 29, however, also includes a responsive email

---

[13] The Court notes that it would be for the jury to determine whether to believe, and what weight to apply to, the statements made by Defendant's employees in these emails, including the statement that Mr. James stood to lose a lot of money if the machines did not produce.

from Nicholas Cotter, who, according to this electronic signature block, is an engineer with Terex. Mr. Cotter's email states "See attached prints. See below for possible parts needed to fix." The email then lists various parts numbers, types of parts and quantities. There is no attachment included with Plaintiff's Exhibit 29. The document has various handwritten notes and monetary figures written on it. Defendant objects to this exhibit on the ground that it is inadmissible hearsay. Plaintiff has not offered any sort of response concerning this exhibit (much less has it explained the handwritten notes thereon) and thus has not argued that it qualifies as non-hearsay or fits within any sort of hearsay exception. To the extent Plaintiff could attempt to rely on Fed. R. Evid. 801(d)(2), it is not clear that the statements in Cotter's email or the handwritten notes are contrary to Terex's trial position. As a result, the Court **SUSTAINS** Defendant's hearsay objection as to Plaintiff's Exhibit 29 in its present form.

## CONCLUSION

For all the foregoing reasons, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Defendant's Objections to Plaintiff's Trial Exhibits, (doc. 101), and **DENIES** Defendant's Motion to Strike Plaintiff's Response as well as its alternative Motion for Leave to File a Reply, (doc. 120).

**SO ORDERED**, this 21st day of November, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA