# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

ROW EQUIPMENT, INC.,

    Plaintiff,

v.

TEREX USA, LLC d/b/a TEREX ENVIRONMENTAL EQUIPMENT,

    Defendants.

CIVIL ACTION NO.: 5:16-cv-60

## **O R D E R**

Plaintiff ROW Equipment, Inc. (at times, "ROW") sued Terex USA, LLC (at times, "Terex"), seeking damages for its purchase (from Defendant Terex) of wood chippers that Plaintiff ROW contends were faulty, frequently malfunctioned, and were never properly repaired or replaced by Terex. The Court granted summary judgment in favor of Terex on all but one of Plaintiff's claims. (Doc. 57.) The sole claim remaining for adjudication at trial is a claim that Defendant Terex breached its express standard warranty that the chippers would be free of "defects in manufacture or materials" and that it would adequately repair or replace the chippers to address any such defects. (Doc. 51, pp. 11, 13; doc. 57, pp. 16–17; see also doc. 15.) Defendants filed a number of Motions in Limine in anticipation of trial, most of which the Court has already addressed via prior Order, (doc. 131). Following additional briefing ordered by the Court, Defendant's "Motion in Limine on Damages," (doc. 85), and Plaintiff's "Amended Motion in Limine," (doc. 97), remain pending and are presently before the Court, along with Defendant's recently filed "Motion to Enforce Exclusion," (doc. 139). For the reasons set forth more fully

below, the Court **DENIES** Defendant's "Motion in Limine on Damages," (doc. 85); **DENIES without prejudice** Plaintiff's "Amended Motion in Limine," (doc. 97); and **DENIES without prejudice** Defendant's "Motion to Enforce Exclusion," (doc. 139).

## BACKGROUND

Defendant's "Motion in Limine on Damages," (doc. 85), sought to limit or exclude certain testimony, particularly if it pertained to damages that were incidental or consequential in nature. Relatedly, Plaintiff's "Amended Motion in Limine," (doc. 97), sought a ruling from the Court that the limited warranty failed its essential purpose as a matter of law and that Plaintiff was therefore entitled to incidental and consequential damages. In addressing these motions, the Court noted material inadequacies and inconsistencies in both of the parties' filings. First, it was unclear whether the issue of the warranty's alleged failure of its essential purpose (which, under Georgia law, could potentially impact the types of available damages) was an issue of law for the Court or one of fact for the jury. Additionally, neither party had ever addressed the applicability of a provision in the warranty that appears to preclude Plaintiff from recovering incidental and consequential damages regardless of whether there was a failure of the warranty's essential purpose. The Court therefore ordered additional briefing on these topics in hopes of making a clear determination on the availability of incidental and consequential damages, which would in turn help guide the Court's rulings on the probative value and admissibility of certain objected-to evidence and testimony.

Thereafter, both parties filed thorough briefs, (see docs. 132, 136). In its brief, Plaintiff withdrew its Amended Motion in Limine, (doc. 136, p. 6).[1] When the lingering issue of the availability of incidental and consequential damages arose during the pretrial conference,

---

[1] In light of Plaintiff's stated withdrawal, the Court **DENIES without prejudice** Plaintiff's Amended Motion in Limine, (doc. 97).

2

Defendant orally moved to exclude all consequential and incidental damages, citing the written limitation provision in the warranty. In response, Plaintiff argued that the provision was unconscionable and thus unenforceable. At that time, both parties agreed that the enforceability of the damages-limitations provisions involved a question of law that would be prudent to address prior to trial. Given the fact that trial was scheduled to begin in just over two weeks, the Court invited Defendant to file a written motion within one week and provided Plaintiff with two days to file a response. While this response window was short, the Court notes that, given the parties' prior briefing and the lengthy discussion and oral argument during the Pretrial Conference, Plaintiff was well-aware (in advance of Defendant's filing) of the general topics it would need to address in its response. Defendant has filed its Motion, (doc. 139 ("Terex's Motion to Enforce the Exclusion of Incidental and Consequential Damages and to Exclude Evidence of Such Damages at Trial")), and Plaintiff has filed a Response in opposition, (doc. 142).

## DISCUSSION

### I. Terex's Motion to Enforce the Exclusion of Incidental and Consequential Damages and to Exclude Evidence of Such Damages at Trial, (doc. 139)

The at-issue warranty for the chippers included the following provisions which are relevant to Defendant's Motion:

> 10. Incidental or Consequential Damage: **TEREX SHALL NOT BE LIABLE FOR AN [sic] INDIVIDUAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOSS OF PRODUCTION, INCREASED OVERHEAD, LOSS OF BUSINESS OPPORTUNITY, DELAYS IN PRODUCTION, COSTS OF REPLACEMENT COMPONENTS AND INCREASED COSTS OF OPERATION THAT MAY ARISE FROM THE BREACH OF THIS WARRANTY, WHETHER OR NOT CAUSED DIRECTLY OR INDIRECTLY BY ANY NEGLIGENCE OF TEREX.** The Buyer's sole remedy shall be limited to (at the sole option of Terex) repair or replacement of the defective part.
>
> . . .

> **IN THE EVENT OF ANY BREACH OF THIS WARRANTY BY TEREX, THE AGGREGATE LIABILITY OF TEREX SHALL BE LIMITED EXCLUSIVELY TO THE REMEDIES (AT THE SOLE OPTION OF TEREX) OF REPAIR OR REPLACEMENT OF ANY DEFECTIVE EQUIPMENT OR PART COVERED BY THE WARRANTY. IN NO EVENT SHALL TEREX BE LIABLE FOR INCIDENTAL, INDIRECT, CONSEQUENTIAL OR OTHER DAMAGES OR LOSSES RESULTING FROM A BREACH OF OR OTHER DAMAGES OR LOSSES RESULTING FROM A BREACH OF WARRANTY INCLUDING, WITHOUT LIMITATION, LABOR COSTS, LOSS OF USE OF OTHER EQUIPMENT, THIRD PARTY REPAIRS, LOST PROFITS, LOSS OF PRODUCTION, INCREASED OVERHEAD, INCREASED COSTS OF OPERATIONS, TOWING OR HAULING OF EQUIPMENT, RENTAL COSTS, PERSONAL INJURY, EMOTIONAL OR MENTAL DISTRESS, IMPROPER PERFORMANCE OR WORK, PENALTIES OF ANY KIND, LOSS OF SERVICE PERSONNEL, OR FAILURE OF EQUIPMENT OR PARTS TO COMPLY WITH ANY FEDERAL STATE OR LOCAL LAW.**

(Doc. 51-4, p. 3 (emphasis and capitalization in the original).)

Notwithstanding these provisions, Plaintiff's Amended Complaint seeks incidental and consequential damages. (See Doc. 15, p. 7 ("Plaintiffs bring this action against Terex USA . . . to recover loss of revenue, and loss of current and future business . . . .").) In its Motion to Enforce the Exclusion of Incidental and Consequential Damages and to Exclude Evidence of Such Damages at Trial, (doc. 139), Defendant cites these provisions and argues that, because there is no evidence that the provisions are unconscionable, the Court should enforce them and thus exclude incidental and consequential damages at trial. (See Doc. 140, pp. 1–8.) Specifically, Defendant asks the Court to "bar introduction at trial of evidence of incidental and consequential damages" and to hold that Plaintiff is "limited to seeking damages for the alleged difference in value of the chippers." (Id. at pp. 8–9.)[2]

---

[2] In the final pages of its Motion, Defendant confusingly argues, beyond the scope of the motion, that "there is no competent evidence, documentary or testimonial, to support a jury award for damages representing the difference in value of either Chipper at the time of delivery." (Doc. 140, pp. 13–17.) Similarly, as part of its argument about Plaintiff's right to seek incidental and consequential damages, Defendant argues that Plaintiff "cannot prove the limited remedy failed of its essential purpose." (Id. at pp. 9–12.) Defendant does not formally request any sort of order from the Court on these arguments, however, and, if Defendant

4

Under Georgia law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." O.C.G.A. § 11-2-714(2). Notably, however, Georgia courts have routinely recognized that a breach or failure of a limited warranty does not negate clauses excluding specific types of damages. See, e.g., Hightower v. General Motors Corp., 332 S.E.2d 336, 338–39 (Ga. Ct. App. 1985) ("The breach or defeat of a limited warranty to repair or replace, of course, does not simultaneously invalidate other limitations of damages contained in the new car warranty . . . ."); A-larms, Inc. v. Alarms Device Mfg. Co., 300 S.E.2d 311, 314 (Ga. Ct. App. 1983) ("[C]onsequential damages may be excluded or limited unless such would be unconscionable, and such limitation of damages where the loss is commercial is not prima facie unconscionable."); see also Atl. Waste Servs., Inc. v. Mack Trucks, Inc., No. CV414-211, 2016 WL 1248942, *5 (S.D. Ga. March 25, 2016); Atlanta Specialty Food Distributors, Inc. v. Watkins Leasing, Inc., No. C81-1341A, 1982 WL 139732, at *3 (N.D. Ga. 1982) ("Where an exclusive remedy fails of its essential purpose it may be ignored but other clauses in the contract which limit remedies may be left to stand or fail independently of the stricken clause."). Thus, under Georgia law, the at-issue limitations provisions (recited above) preclude Plaintiff from seeking and recovering damages that are consequential or incidental in nature unless Plaintiff proves that the limitations provisions are unconscionable.

In its Response, Plaintiff first argues that while Defendant styles its Motion as a motion to exclude evidence, in reality the motion is an untimely effort to seek summary judgment. Plaintiff contends that, rather than the exclusion of evidence, Defendant seeks a ruling that the at-issue

---

does desire a ruling, the appropriate time for these arguments to be raised is at trial via a motion pursuant to Federal Rule of Civil Procedure 50.

5

limitations provisions are not unconscionable as a matter of law and "in effect seeking dismissal of Plaintiff's claim for consequential damages." (Doc. 142, pp. 4–5.) While Plaintiff concedes that "unconscionability" is a question of law that should be determined by the Court, Plaintiff objects to the timing of the motion raising the question, particularly given the abbreviated time afforded to Plaintiff for filing a response. (Id. at pp. 7–8.) Plaintiff emphasizes that O.C.G.A. § 11-2-302, the Georgia statute addressing unconscionable contracts or clauses, specifically provides that, "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable[,] *the parties shall be afforded a reasonable opportunity to present evidence* as to its commercial setting, purpose, and effect to aid the court in making the determination." O.C.G.A. § 11-2-302(2) (emphasis added). Plaintiff offers some argument, though limited, in an effort to show unconscionability, but urges that it "anticipates that the facts introduced at trial will support both substantive and procedural unconscionability, with more emphasis on substantive unconscionability." (Id. at p. 10 (claiming substantive unconscionability is demonstrated by the fact that "the Plaintiff, who paid hundreds of thousands of dollars for the defective chippers, was stuck with a faulty product, and his available remedies were left to 'repair/replacement' of the defective components," and that "Terex, and Terex only, had the ability to decide whether the machine was defective, and whether this defect was covered under the Warranty").)

Plaintiff additionally argues that, even if it is precluded from recovering incidental and consequential damages, certain evidence related to those types of damages is still relevant and should not be excluded, as Plaintiff is entitled to rely on it to support its claim that the repair/replace warranty failed its essential purpose. (Id. at pp. 11–12.)

The Court emphasizes, at the outset, that it will not interpret or otherwise treat Defendant's Motion, which the Court invited Defendant to file, as a motion for summary judgment.[3] To be clear, no party has ever moved for summary judgment with regard to the at-issue limitations provisions or with regard to Plaintiff's right to seek and recover incidental and consequential damages. In raising these issues and inviting briefing and ultimately a motion to exclude, the Court aimed to establish a clear and bright line regarding the types of damages that are at issue and the types of damages-related evidence that may be properly presented to the jury. Clarity on this topic was particularly critical given the bevy of objections and disputes presented by the parties that centered on whether particular evidentiary items relating to damages were relevant and material. It is difficult to determine the probative value of particular items of evidence when the parties strongly dispute the availability of entire categories of damages.

As a result of the parties' briefing and arguments, however, the Court is satisfied that, regardless of the validity and enforceability of the limitations provisions (i.e., whether they are conscionable or unconscionable), and regardless of whether the jury finds that the repair/replace warranty failed of its essential purpose, evidence relating to incidental and consequential damages has probative value and, in general, is not unduly prejudicial. Both parties agree that Plaintiff is entitled to seek and recover damages in the amount of the difference between the value of the chippers as accepted and the value they would have had if they had been as warranted. Evidence regarding things like the number of repairs that had to be made to the chippers, the extent and cost of any such repairs, particular times and situations in which the chippers quit working or did not work properly, and the length of time the chippers were unavailable for use are all arguably probative on the issue of the values of the chippers as accepted. Even Defendant, in its "Bench

---

[3] The deadline for filing pretrial dispositive motions passed long ago on December 29, 2017. (Doc. 43, p. 3.)

Brief Re: Damages," acknowledged that the cost of repair can be used to help prove the difference in values. (Doc. 132, p. 10.) As a result, even if it is determined that the limitations provisions are valid and enforceable and Plaintiff is therefore not entitled to recover incidental and consequential damages, evidence related to incidental and consequential damages could be relevant and is therefore not per se inadmissible.

In light of the foregoing and in an abundance of caution, particularly in light of O.C.G.A. § 11-2-302(2)'s requirement that "the parties . . . be afforded a reasonable opportunity to present evidence" on the issue of unconscionability, the Court **DENIES without prejudice** Defendant Terex's Motion to Enforce the Exclusion of Incidental and Consequential Damages and to Exclude Evidence of Such Damages at Trial, (doc. 139). However, if, during trial, Defendant believes a specific piece of evidence is not admissible and would be unduly prejudicial, then Defendant may object at that time to the specific piece of evidence. Likewise, the parties are not foreclosed from raising and addressing any of these issues at an appropriate time during the trial of the case pursuant to Fed. R. Civ. P. 50.[4] In the event such a motion is presented to the Court, the briefing that has previously been provided by the parties will be taken into consideration and will help guide the Court's decision on the motion.

## II. Terex's Motion in Limine to Exclude Damages Testimony

The Court now turns to Defendant Terex's earlier-filed Motion in Limine, (doc. 85), in which Defendant seeks an order prohibiting Plaintiff ROW's owner, Mr. James, from presenting "speculative" testimony regarding the damages Plaintiff alleges to have incurred due to the problems with the chippers.

---

[4] To the extent Plaintiff may seek to present evidence pertaining to unconscionability that need not be presented in the presence of the jury, Plaintiff should request to do so during trial but outside the presence of the jury.

The Court notes that it is not entirely clear exactly what Defendant is asking the Court to exclude. The first substantive discussion section of the Motion—which bears the heading "James' Testimony Regarding ROW's Alleged Damages Is Too Speculative To Support A Jury Verdict"—focuses mostly on taking umbrage at Plaintiff's lack of documentary evidence related to damages. Defendant argues that Plaintiff ROW's only evidence on damages is Mr. James' "self-serving statements" and that, "[s]ince ROW cannot present for the jury a complete picture of income or expenses for either [c]hipper, the jury cannot estimate with reasonable certainty the amount of damages ROW suffered, if any." (Id. at p. 10.) This sort of assertion regarding the sufficiency or weight of evidence, however, is not appropriate for a Motion in Limine, which should be focused on the threshold issue of *admissibility*. Terex does, however, also urge that Mr. James "should not be permitted to speculate as to the damages ROW allegedly incurred," (id.), which on the surface sounds like an appropriate ground for a motion in limine. Later, at the end of the brief, Defendant prays for an order "prohibiting James from testifying to any damages in excess of the $21,576.91 for money allegedly spent on repairs to the Chippers and $313,819.54 as money allegedly paid to Terex for the two Chippers, and then only to the extent such amounts are supported by contemporaneous records." (Doc. 85, p. 13.) In its Reply to Plaintiff's Response, Defendant resumes voicing its frustration with the dearth of documentary evidence of expenses:

> There are no records of in-house repairs to the Chippers, the amount of time ROW spent in-house repairing the Chippers, the value of the in-house repairs, or the amount spent for parts on in-house repairs, exclusive of purchasing wear parts (Response at 6), which are excluded under Terex USA's warranty. Other than the one receipt for repairs to the Chippers and, the invoices for parts, assuming the repair parts can be distinguished from wear parts, ROW's damages for breach of warranty are based solely on the speculation of James as to the alleged repair costs.

(Doc. 107, p. 9.) Terex claims that, "[w]ithout the documentation evidencing ROW's damages, [it] is limited in its ability to fully cross-examine ROW's witnesses on its claimed damages." (Doc. 85, pp. 11–12.) Terex's frustration is not unfounded, as it does appear that ROW has never been

9

overly forthcoming regarding the damages it claims to have suffered and seeks to recover. Defendant's Motion in Limine, however, seeks to exclude only damages-related testimony from Mr. James only on the ground that such testimony would somehow be "too speculative" due to the lack of corresponding documentation. The issue, then, is whether the at-issue testimony from Mr. James "as to the damages ROW allegedly incurred," (id. at p. 10), is "clearly inadmissible" such that the Court should exclude that evidence now.

"Before and after enactment of the Uniform Commercial Code in Georgia, the rule preventing recovery of 'speculative' damages referred 'more especially to the uncertainty as to the cause, rather than uncertainty as to the measure or extent of damages.'" Hawthorne Indus., Inc. v. Balfour Maclaine Intern., 676 F.2d 1385, 1387 (11th Cir. 1982) (quoting B & D Carpet Finishing Co. v. Gunny Corp., 281 S.E.2d 354 (Ga. Ct. App. 1981)). While the parties here dispute causation, there is sufficient admissible evidence upon which the jury would be permitted to find that a breach by Defendant of the standard warranty caused ROW damages; there is sufficient evidence that the chippers malfunctioned on more than one occasion, were unable to be used for at least some periods of time, and that they required numerous repairs. Thus, the causation of any alleged damages is not being left entirely to speculation. What Defendant clearly takes issue with is Mr. James' ability to testify about the *amounts* of damages that Plaintiff may claim it has incurred.

"[T]he ability to estimate damages to a reasonable certainty is all that is required and mere difficulty in fixing the exact amount will not be an obstacle to the award. The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages." Pendley Quality

Trailer Supply, Inc. v. B&F Plastics, Inc., 578 S.E.2d 915, 919 (Ga. Ct. App. 2003) (quoting McCannon v. McCannon, 499 S.E.2d 684, 686 (Ga. Ct. App. 1998)).

As such, "[e]vidence that the [chippers] were defective cannot alone establish the value of the[m] as accepted," and the determination of the measure of damages "cannot be left to speculation, conjecture and guesswork." Ficklin v. Hyundai Motor Am., Inc., 611 S.E.2d 732, 734 (Ga. Ct. App. 2005) (quoting Williams v. Dienes Apparatus, 407 S.E. 2d 408, 410 (Ga. Ct. App. 1991)). However, "compensation for undisputed injury should not be denied merely because the amount of damages cannot be precisely and exactly determined." Hawthorne Indus., Inc., 676 F.3d at 1388. Plaintiff's evidentiary burden is to "produce evidence which would furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages." Ficklin, 611 S.E.2d at 734 (quoting Williams, 407 S.E. 2d at 410).

Here, it remains to be seen exactly what testimony Mr. James will offer on the topic of damages. Assuming, however, that his testimony (considered in conjunction with any other relevant damages-related evidence) presents "data sufficient to enable [the jury] to estimate with reasonable certainty the amount of the damages," the jury would be entitled to consider that evidence.

In sum, Defendant has not pointed to any specific testimony that it expects Plaintiff to elicit from Mr. James that would be obviously based entirely on speculation, conjecture and guesswork. Consequently, Defendant has not identified any testimony that would be clearly inadmissible and warrant exclusion prior to trial. For the foregoing reasons, the Court **DENIES** Defendant's Motion in Limine seeking exclusion of damages-related testimony from Mr. James. Defendant is not, however, precluded from raising objections to Mr. James' specific testimony at trial or making any appropriate motion during trial regarding the sufficiency of the damages evidence.

**III. Terex's Request for Spoliation Sanctions**

In its Motion in Limine, (doc. 85), Terex requests that, if the Court declines to exclude Mr. James's testimony, the Court make a determination that Plaintiff spoliated evidence relating to its damages and issue sanctions against ROW. Specifically, Terex requests:

> If James is allowed to testify to damages in excess of the $21,576.91 for money allegedly spent on repairs to the Chippers and $313,819.54 as money allegedly paid to Terex for the two Chippers, Terex USA requests that the Court direct the jury that ROW's failure to preserve evidence raises a presumption against ROW.

(Id. at p. 13.)

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Brown v. Chertoff, 563 F. Supp. 2d 1372, 1377 (S.D. Ga. 2008). In Flury v. Daimler Chrysler Corporation, the Eleventh Circuit held that "federal law governs the imposition of spoliation sanctions" but at the same time observed that federal law does not set forth "specific guidelines" to determine when such sanctions are warranted. 427 F.3d 939, 944 (11th Cir. 2005). The court then borrowed a multi-factor test from Georgia spoliation law, which it found to be "wholly consistent with federal spoliation principles." Id. The factors identified by the Court in Flury, as relevant to the inquiry, include: (1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed. See id. at 945. Generally, the party moving for sanctions carries the burden of proof on the spoliation issue, including the legal elements needed to establish spoliation. See Eli Lilly & Co. v. Air Express Int'l USA, Inc., 615 F.3d 1305, 1318 (11th Cir. 2010).

If a party claims another party spoliated electronically stored information, subsection (e) of Federal Rule of Civil Procedure 37 applies. Pursuant to a recent amendment, that subsection provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>    (A) presume that the lost information was unfavorable to the party;
>
>    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>    (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). The Eleventh Circuit recently acknowledged that it has not yet had the opportunity to determine whether, given the amendment to Rule 37, the multi-factor test relied upon in Flury is still applicable when a party seeks sanctions based on the spoliation of electronically stored evidence. ML Healthcare Services v. Publix Super Markets, Inc., 881 F.3d 1293, 1308 (11th Cir. 2018). The Court notes, however, that the subsection only allows for a presumption against the spoliating party upon a finding that it acted with the intent to deprive the other party of the information's use in the litigation.

The Court has "broad discretion" to impose sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." Id. Spoliation sanctions may include dismissal, exclusion of testimony, or an instruction to the jury to presume that the evidence would have been unfavorable to the spoliator. Id. at 945. The Court examines "the extent of the prejudice caused by the spoliation (based on the importance of the

evidence to the case), whether that prejudice can be cured, and the culpability of the spoliator." Oil Equip. Co. v. Modern Welding Co., 661 F. App'x 646, 652 (11th Cir. 2016). "This all, of course, presupposes that the evidence existed at one time." Arenas v. Ga. DOC, No. 4:16-cv-320, 2019 WL 1573698, at *2 (S.D. Ga. Apr. 11, 2019).

Here, it is unclear what specific documents Defendant claims were in Plaintiff's possession and whether Defendant claims Plaintiff possessed physical copies or electronic copies or how Plaintiff destroyed such copies or failed to preserve them when in the course of or anticipation of litigation. It is even less clear what Defendant believes it would have been able to prove with that documentation and, thus, how it has been prejudiced. The burden to prove damages rests with Plaintiff ROW, not Defendant, so the complained-of documentation is not necessary in order for Defendant to prove some element of its case. Defendant's only real argument regarding its "need" for the documents is that Defendant is dubious of the reliability of damages-related testimony to be elicited from Plaintiff's owner, and wishes it had documentation which it could potentially to cross-examine Mr. James. Potential cross-examination material of this sort, however, is not the type of necessary evidence that would ordinarily give rise to the severe spoliation sanctions that Defendant seeks. Further, Defendant claims that Plaintiff's failure to preserve the documentation entitles it to "a presumption against ROW" but Defendant offers no specifics on how this presumption would be presented to the jury. Simply telling the jury that it must presume the documentation would have been "unfavorable" to Plaintiff is vague and would cause confusion. Lastly, and perhaps most importantly, there is no evidence tending to show Plaintiff acted in bad faith or with intent to deprive Defendant of the information's use in the litigation.

In sum, under either the multi-factor test relied upon in Flury or the standards of Rule 37(e), Defendant has failed to establish that the Court should issue spoliation sanctions in this case,

particularly the severe and vague sanctions Defendant has requested.  Instead, Defendant's proper avenue is, if it chooses, to thoroughly cross-examine Mr. James (and any others offering testimony about damages) regarding the lack of supporting documentation and to argue to the jury that, given Plaintiff's lack of supporting documentation, the jury should be skeptical about Plaintiff's claimed damages amount.  See, e.g., Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 1:12-cv-3096-MHC, 2015 WL 11199154, at *2 (N.D. Ga. Feb. 3, 2015) (denying request for spoliation sanctions for defendant's failure to preserve truck's black box data, explaining that "[a]lthough [p]laintiff may have been prejudiced . . . , the Court finds that any potential prejudice can be cured by eyewitness testimony concerning [the] truck's speed and lack of braking" and "[d]efendants will then have the opportunity to cross-examine those witnesses").  In light of the foregoing, the Court **DENIES** Terex's request for spoliation sanctions, (doc. 85).

## CONCLUSION

For all the foregoing reasons, the Court **DENIES** Defendant's "Motion in Limine on Damages," (doc. 85); **DENIES without prejudice** Plaintiff's "Amended Motion in Limine," (doc. 97); and **DENIES without prejudice** Defendant's "Motion to Enforce Exclusion," (doc. 139).

**SO ORDERED**, this 6th day of December, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

15